Hitchcock, J.,
delivered the opinion of the court:
A doubt has been suggested as to the regularity of the pleading in this ease, on the ground that the plaintiff has replied double, to the third plea of the defendant. This subject is regulated by statute. Section 47 of the practice act, 29 Ohio L. 67, provides “ that it shall be lawful for the plaintiff in replevin, or for the defendant or tenant in any other action in any court of record, with leave of such court, to plead as many several matters as he shall think necessary for his defense.” In replevin both parties are considered as actors. And if the defendant avows or justifies to this avowry or justification, the plaintiff may reply or plead double. Such is the intendment of the statute; the pleadings, therefore, are regular.
The decision of this case depends upon the validity of so much of the ordinance under which the defendant justifies, as creates forfeitures and attempts to enforce them, without legal adjudication or investigation. This ordinance was enacted in December, 1826, by the city council of Cincinnati, and, together with others, contains the following sections:
“ Sec. 16. Be it further ordained, that no person or persons shall be allowed to keep in any house or other building within the bound-' aries of the corporation of this city more than twenty-eight pounds of gunpowder at any one time, *which twenty-eight pounds shall be divided into at least four parcels, and each parcel secured in stone jugs with tight stoppers, or in tin canisters provided with safe and sufficient covers ; and not more than seven pounds in any jug or canister as aforesaid ; and any person or persons keeping twenty-eight pounds of gunpowder, or less, within the boundaries aforesaid, and shall neglect or refuse to parcel and secure it in manner aforesaid, shall forfeit the same to the corporation; and any person or persons keeping any greater quantity than twenty-eight pounds within the boundaries aforesaid, shall forfeit the same, and shall pay a fine of twenty dollars for every hundred weight that he, she, or they, may have in their possession; and *361 in that proportion for any greater or less quantity, on conviction thereof before the mayor; provided, that nothing in this ordinance shall be so construed as to prevent any person from conveying gunpowder through the streets to some place of deposit without the limits of the corporation; provided, that all gunpowder shall be put iip in .tight or sufficient casks or kegs.”
Section 11 makes it the duty of the city marshal and his deputies, and the chief and assistant engineers of the fire department and any of' the fire wardens, on any day (Sundays excepted), to ■enter into any building where gunpowder is kept or supposed to be kept, and examine the premises, and if any gunpowder is found ■contrary to the provisions of the preceding section, it is made their duty to receive the same and convey it to some safe place of deposit without the city. And it is further made the duty of the marshal, after having given three days’ publication, to sell all the gunpowder so seized, to the highest bidder, for the benefit of the corporation.
This section contains further provisions, to which it is unnecessary to refer.
The first important question is, did the corporation, under their charter, possess power to create this forfeiture ? For no matter •how expedient it may be, it can not be sustained unless the power is granted in the act creating the corporation. A corporation may, nay, they must, from the necessity of the case, have power to regulate their own internal concerns; and this, although the power is not specifically granted. But *the power to create forfeitures is a high power; one which will not be exercised by the legislature of the state except in extreme cases. Certainly, then, no corporation shall be permitted to exercise this posver, unless under an express and explicit grant of the right. But about this there is no dispute. The principle is not controverted.
It is claimed, however, that the power was created by the act of incorporation. The law in force at the time this ordinance was enacted, was the act of January 10, 1815, 13 Ohio L. 60. Section 7 defines the powers and duties of the town council, and among other things authorizes them “ to impose reasonable fines on all' persons offending against the laws and ordinances aforesaid, and to cause all such fines and all such forfeitures and penalties as may be incurred, under the laws and ordinances of the corporation, to *362 be assessed, levied, and collected in such manner as they may prescribe.”
This is the only part of the law in which reference is had to forfeitures. It is clear that here is no. express grant of power to create-a forfeiture, and without such express grant, the power can not be exercised. But was it even proper to imply it, it could not, in the opinion of the court, be implied from this clause. The first part of this clause grants the power “to impose reasonable fines,” and. the latter part grants the power to prescribe the manner in which these fines may be assessed, levied, and collected. True, the words forfeitures and penalties are used, but from the manner in which they are used, from the connection in which they are placed, it is manifest that nothing more was intended than fines merely. Else-why speak of that which is to be assessed, levied, and' collected ?
In the “act to incorporate the city of Cincinnati,” etc., 25 Ohio L. 40, this power is expressly granted. Section 8 authorizes the city council “to impose fines, forfeitures, and penalties on all persons-offending against the laws and ordinances of said city, and provide for the prosecution, recovery, and collection thereof.” By section 24 of this act, “ all laws, ordinances, and resolutions heretofore lawfully passed and adopted by the city council of said city,” are continued in force until repealed. Now, although at the *time-the property in controversy was seized, the city council possessed this power, inasmuch as the defendant acted under an ordinance made at a time when they did not possess it, it will not avail him in his defense.
That the city council, under the law of 1815, had the power to-pass a law to prevent large quantities of gunpowder from being kept in the city, we have no doubt. For offending against an ordinance of this description they might impose fines. With equal propriety they might provide for its removal to a safe placo without the limits of the corporation. But they have not the power to declare it. forfeited, nor the right when it is removed to withhold it. from the owner.
Inasmuch, then, as the defendant, after the gunpowder was removed to a place of safety, refused, upon demand made, to deliver it up to the plaintiff, he is not justified. The replication is sufficient in law, and upon the demurrer, judgment must be entered for the-plaintiff.
Such being the opinion of the court upon the first question raised *363 by the defendant’s counsel, it is unnecessary to consider the second. But were it necessary, we should have no difficulty. No man ought to be deprived of his property by forfeiture without having a legal investigation. And an ordinance of a corporation which violates-this principle, is not consistent with the spirit of the laws of the-United States or of this state.