[Cite as *State v. Recinos*, 2014-Ohio-3021.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| -vs- | : |  |
|  | : |  |
| RICARDO A. RECINOS | : | Case No. 14CA9 |
|  | : |  |
| Defendant-Appellee | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County Court of Common Pleas, Case No. 2013-CR-580H

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     July 7, 2014

APPEARANCES:

For Plaintiff-Appellant

JILL COCHRAN
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH 449902

For Defendant-Appellee

RANDALL FRY
10 West Newlon Place
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Appellant, the State of Ohio, appeals the dismissal by the Richland County Court of Common Pleas of a forfeiture specification contained in the indictment of defendant-appellee Ricardo A. Recinos, the trial court's suspension of Recinos' prison sentence without the imposition of community control sanctions and the trial court's order that the money which was the subject of the forfeiture specification be utilized to pay Recinos' fine, court costs and restitution.

*Facts and Procedural History*

{¶2} On August 22, 2013, Ohio State Highway Patrol Trooper Shane Morrow, canine handler to canine Hera, was stationed at mile marker 176 on Interstate 71 in Richland County, Ohio, monitoring southbound traffic. Trooper Morrow noticed a white full-sized van that appeared to have window tint on the driver side that was so dark that the driver was not visible. The trooper noted this as a violation of the laws of the State of Ohio as side windows are required to allow 50% light, plus or minus three percent.

{¶3} Trooper Morrow decided to perform a stop on the vehicle for an equipment violation, pulled into traffic behind the vehicle, and started to run the vehicle plates. The driver of the vehicle rolled down the window and was observed watching the officer's vehicle through his side mirror. The trooper initiated a traffic stop in the area of State Route 39. The trooper made a passenger side approach for his own safety and upon approach noticed that the passenger, Recinos, was making furtive movements with his right hand beside and behind his seat in the area of the passenger side door. Trooper Morrow opened the side door and Recinos raised his hands, revealing a wad of cash

with a one-hundred dollar bill on the outside. The total amount of this money was $7,500.

{¶4} Due to the Recinos movements, the large amount of cash, which in the officer's training an experience usually indicates drug trafficking, and other indicators through the course of the stop, the trooper decided to perform a walk-around search with his canine, while other officers validated the identifications of the vehicle occupants. Canine Hera indicated the presence of illegal substances in the area of the rear passenger door, just behind the front passenger seat where Recinos was seated, in the area where he was seen reaching. A subsequent search of the area turned up a plastic baggie of what was later determined to be methamphetamine.

{¶5} The window tint was later found to have been ripped off the windows by the vehicle occupants at some point during the stop and tossed to the floor of the vehicle. Testing of the window tint indicated that it was only allowing in 11.2% of light. Upon searching the vehicle, numerous cell phones and air fresheners were found throughout the vehicle.

{¶6} The trooper spoke to Recinos during the course of the stop. Recinos indicated that he was a mechanic from Columbus who was coming from doing some work in Medina. He also mentioned that he bought and sold cars. *Id.* Throughout the interview, Recinos offered varying stories about where the money came from.

{¶7} Recinos testified that he had a business with his girlfriend, buying and selling cars. He also testified that by profession he was a mechanic and that on the day in question, he was coming from Medina where he had some mechanic work. Recinos testified that part of the money he had on his person was from the sale of a car two

weeks prior. The trooper also informed the trial court that he had interviewed Recinos regarding his money situation and had given the grand jury information regarding the Recinos income and his monthly expenses.

{¶8} Recinos was indicted with one count of aggravated possession of drugs, in violation of R.C. 2925.11(A) & (C)(1)(a), said drug being methamphetamine, a schedule II drug in an amount less than bulk, a felony of the fifth degree, The indictment also contained a forfeiture specification for $7,500 in cash alleged to have been obtained by Recinos directly or indirectly from the commission of said offense.

{¶9} Recinos filed a motion to return personal property on November 25, 2013, requesting the return of the money taken from his person by the Ohio State Highway Patrol and requesting a hearing on the matter. The State filed a reply on December 3, 2013, arguing that the motion could not be considered at the time because the money in question was the subject of an indicted forfeiture specification. The trial court overruled the motion on December 10, 2013.

{¶10} On December 9, 2013, Recinos filed a Motion to Suppress, specifically arguing the legality of the vehicle stop and the propriety of the search of the vehicle. The state responded on December 23, 2013. The suppression hearing was held on January 17, 2014.

{¶11} Apparently, after the completion of the suppression hearing there were discussions off the record. When the record started again, it was clear that the court was intent on holding a hearing regarding the forfeiture specification. The State indicated that it had only been prepared to go forward on the motion to suppress that had been scheduled that day and had neither the evidence nor the testimony prepared

to go forward on the forfeiture specification. The court's response was that the forfeiture specification would then be dismissed if the State did not have evidence to go forward. When the State indicated that time was needed to prepare the evidence, the trial court demanded to know what evidence regarding the forfeiture was presented to the grand jury. The trial court then determined that there had not been probable cause for the grand jury to have charged the forfeiture specification and dismissed it over the objection of the State.

{¶12} Recinos then entered an *Alford* plea to the possession charge. The trial court sentenced Recinos to six months in prison. He was given credit for time served, approximately three days, and the rest of the time was suspended. Recinos was not placed on community control. Nor was he sentenced to post release control. The trial court further ordered that Recinos pay a $2,500 fine, costs and restitution to the Ohio State Highway Patrol for the drug test. The trial court specifically ordered that the Ohio State Highway Patrol turn the money over to the clerk of courts in order to have the $2,500 fine, lab fees and costs deducted from the money and to pay the remainder to Recinos through his attorney.

*Assignments of Error*

{¶13} The state has raised four assignments of error,

{¶14} "I. THE TRIAL COURT VIOLATED THE DUE PROCESS RIGHTS OF THE STATE WHEN IT DISMISSED THE PROPERLY CHARGED FORFEITURE SPECIFICATION IN THIS CASE WITHOUT HOLDING A HEARING WITH PROPER NOTICE GIVEN TO THE STATE.

{¶15} "II. THE TRIAL COURT ERRED IN DISMISSING THE FORFEITURE SPECIFICATION IN THIS CASE WHEN THE PREPONDERANCE OF THE EVIDENCE ESTABLISHED THAT THE MONEY WAS SUBJECT TO FORFEITURE.

{¶16} "III. THE APPELLEE'S SENTENCE WAS CONTRARY TO LAW WHEN IT CONTAINED A SUSPENDED PRISON SENTENCE WITHOUT THE IMPOSITION OF A COMMUNITY CONTROL SANCTION.

{¶17} "IV. THE TRIAL COURT ERRED IN ORDERING THAT THE STATE HIGHWAY PATROL RELEASE THE MONEY TO THE CLERK OF COURT TO PAY THE APPELLEE'S FINE, COURT COST AND RESTITUTION."

## I & II

{¶18} Because we find the issues raised in the state's first and second assignments of error are closely related, for ease of discussion, we shall address the assignments of error together.

{¶19} The state argues the trial court erred when it dismissed the forfeiture specification in this case due to "lack of probable cause" presented before the grand jury and further, through the course of the suppression hearing presented sufficient evidence that the money that was seized from Recinos was a proceed derived from or acquired from a drug offense.

{¶20} R.C. Chapter 2981 permits "[a] law enforcement officer [to] seize property that the officer has probable cause to believe is property subject to forfeiture." R.C. 2981.03(A)(2). "Property subject to forfeiture" is defined to include "contraband" and "instrumentalities" involved in the commission of a felony. See R.C. 2981.01(B)(13) and R.C. 2981.02(A)(1), R.C. 2981.02(A)(3)(a), and R.C. 2981.02(B).

**{¶21}** A prosecuting attorney may then pursue forfeiture of seized property in a criminal proceeding under R.C. 2981.04, a civil proceeding under R.C. 2981.05, or both. R.C. 2981.03(F). Criminal forfeiture is initiated by including in the charging instrument a specification consistent with R.C. 2941.1417 or by providing the defendant with "prompt notice," in conformity with Crim.R. 7(E), that the property is subject to forfeiture. R.C. 2981.04(A)(1) and (A)(2). Civil forfeiture is initiated by filing "a complaint requesting an order that forfeits the property to the state or a political subdivision." R.C. 2981.05(A). See, *State v. North,* 1st Dist. Hamilton No. C-120248, 2012-Ohio-5200, ¶8.

**{¶22}** Forfeiture may be ordered only after the prosecuting attorney has identified and notified parties with an interest in the property, the trial court has conducted a hearing, and the trier of fact has found that the property is subject to forfeiture. *See* R.C. 2981.04(A) and (B), R.C. 2981.05(B) and (D), and R.C. 2981.03(A)(1). *State v. North, ¶9; Accord, State v. Allen*, 10th Dist. Franklin Nos. 13AP-460, 13AP-462, 2014-Ohio-1806, ¶28. Before the final forfeiture adjudication, the state or a political subdivision holds "provisional title to property subject to forfeiture," permitting the state or political subdivision to seize, hold, and protect the property. "Title to the property vests with the state or political subdivision when the trier of fact renders a final forfeiture verdict or order." R.C. 2981.03(A)(1); *see also* R.C. 2981.04(G) and 2981.05(E). Id.

**{¶23}** The Ohio Supreme Court has observed,

Moreover, the forfeiture of items contemplates judicial action and additional considerations that extend beyond a defendant's criminal case. The proceeding itself requires an additional finding by the trier of fact. R.C.

2981.04(B). Issues concerning the defendant's interest and the ability to seize the property also must be considered. R.C. 2981.06. And these determinations may be made by the trier of fact after the court finds the defendant guilty of the offense. R.C. 2981.04(B).

*State v. Harris,* 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, ¶33.

{¶24} A forfeiture action, while instituted as a criminal penalty, is a civil proceeding. *State v. Roberts*, 102 Ohio App.3d 514, 518, 657 N.E.2d 547(9th Dist. 1995), citing *State v. Casalicchio*, 58 Ohio St.3d 178, 181, 569 N.E.2d 916(1991). Accordingly, due process requires that proceedings seeking a disposition of property in forfeiture comply with the Rules of Civil Procedure. *State v. Gaines*, 64 Ohio App.3d 230, 236, 580 N.E.2d 1158(12th Dist. 1990).

{¶25} The state argues that the trial court incorrectly determined the ultimate issue in the case, which is, whether the items were subject to forfeiture under the statute, following a hearing on a motion to suppress. We agree.

{¶26} Recinos motion to suppress did not raise the ultimate issue of whether the property was subject to forfeiture under the statute. Further, the trial court scheduled a "suppression" hearing not a "forfeiture" hearing. Our brethren in the Ninth District have noted,

The ultimate issue in this case, that is, whether the seized items are subject to forfeiture, was not raised by the suppression motion and should not have been considered by the court in rendering its decision on that motion. As in any case in which a party argues for suppression of

evidence, the court must rule on the motion before the parties can proceed to litigating the ultimate issue.

*State v. Crumpler,* 9th Dist. Summit Nos. 26098, 26118, 2012-Ohio-2601, ¶25.

**{¶27}** In the case at bar, the question of whether the stop and the seizure of Recinos and his belongings was lawful was merely a preliminary step on the way to determining the ultimate issue, that is, whether the seized property is "subject to forfeiture." R.C. 2981.03(A)(2); R.C. 2981.04(B).

**{¶28}** We have often noted that forfeitures are not favored in law or equity and are statutory provisions that must be strictly construed. *State v. Thompson*, 5th Dist. Fairfield No. 03CA87, 2004–Ohio–7269, ¶32, *citing State ex rel. Lukens v. Industrial Commission*, 143 Ohio St. 609, 56 N.E.2d 216 (1994). Where the statutory requirements for forfeiture have not been met, we have no choice but to reverse the decision of the trial court and remand for further proceedings. *State v. Wood*, 5th Dist. Licking No. 12-CA-19, 2013-Ohio-1136, ¶44.

**{¶29}** The state's first assignment of error is sustained. We vacate the order of the trial court that the Ohio State Highway Patrol turn the money over to the clerk of courts, reverse the decision of the trial court denying the forfeiture specification and remand this case for further proceedings. In light of our disposition of the state's first assignment of error, we find the state's second assignment of error to be premature.

III.

**{¶30}** In its third assignment of error, the state argues the trial court's sentence of six months in prison with credit for time served, was contrary to the law. Specifically, the state contends the trial court was required to sentence Recinos either to prison or

community control. Without a pre-sentence report, the state maintains Recinos could not be sentenced to community control.

**{¶31}** The state concedes that it did not object to the sentence at the time of sentencing in the trial court. Therefore, this Court may analyze the error in this case pursuant to the Crim.R. 52(B) plain error analysis.

> [A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus,* 560 U.S. 258, 130 S.Ct. 2159, 2164,176 L.Ed.2d 1012 (Internal quotation marks and citations omitted).

**{¶32}** Upon review, we find with regard to fourth and fifth degree felonies, R.C. 2929.13, effective date September 30, 2011, now provides:

> (B)(1)(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, *the court shall sentence the offender to a community control sanction of at least one year's duration if all of the following apply*:
>
> (i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(iv) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.(Emphasis added).

{¶33} R.C. 1.42 states: "1.42 Common and technical usage. Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

{¶34} The word "shall" is usually interpreted to make the provision in which it is contained mandatory. *Dorrian v. Scioto Conservancy District*, 27 Ohio St. 2d 102, 107, 271 N.E.2d 834 (1971). In contrast, the use of the word "may" is generally construed to make the provision in which it is contained optional, permissive, or discretionary. *Id.* The words "shall" and "may" when used in statutes are not automatically interchangeable or synonymous. *Id.* To give the "may" as used in a statute a meaning different from that given in its ordinary usage, it must clearly appear that the Legislature intended that it be

so construed from a review of the statute itself. *Id.* at 107– 108, 271 N.E. 2d 834. *In re: McClanahan,* supra at ¶ 17.

**{¶35}** The language of R.C. 2929.13 is clear and unambiguous on its face and needs no interpretation. If the trial court does not sentence a person convicted of felony of the fourth or fifth degree to prison, the trial court must place the individual on community control sanctions if it finds present the circumstances listed in R.C. 2929.13(B)(a)(i) through (iii). In addition, a trial court is required to "order a presentence investigation and report before imposing community control sanctions or granting probation." Crim.R. 32.2; R.C. 2951.03(A)(1). *See also, State v. Evans*, 93 Ohio App.3d 121, 125, 637 N.E.2d 969 (9th Dist. 1994)("This rule clearly provides that a presentence investigation is required only when a trial court actually sentences the defendant to probation...."); *State v. Mitchell,* 141 Ohio App.3d 770, 771-772, 753 N.E.2d 284(8th Dist. 2001)("Community control sanctions, in general, are inapplicable to the facts of this case due to the absence of a predicate presentence investigation report made prior to sentencing. See R.C. 2951.03(A)(1) and Crim.R. 32.2, which require a pre-sentence investigation report prior to imposing a community control sanction. Thus, the court's only viable option at the time of sentencing was a period of incarceration.").

**{¶36}** R.C. 2929.13(B)(1)(a), as amended, requires the trial court to sentence Recinos to a community control sanction of at least one year's duration if it finds present the circumstances listed in R.C. 2929.13(B)(a)(i) through (iii). See *State v. Henson*, 5th Dist. Delaware No. 11 CAA 110112, 2012–Ohio–2894, ¶12. Further, the trial court could not impose a community control sanction because it did not obtain a presentence investigation report. Accordingly, Recinos' sentence was contrary to law.

**{¶37}** The state's third assignment of error is sustained. We vacate Recinos' sentence and remand the matter to the trial court for resentencing under the correct guidelines as set forth in the statutes as amended by H.B. 86.

IV.

**{¶38}** In the fourth assignment of error, the state contends the trial court erred by ordering that the money which was the subject of the forfeiture specification be utilized to pay Recinos' fine, court costs and restitution.

**{¶39}** In light of our disposition of the states' first and third assignments of error, we find the state's fourth assignment of error to be premature.

*Conclusion*

{¶40} The state's first and third assignments of error are sustained. We vacate the order of the trial court that the Ohio State Highway Patrol turn the money over to the clerk of courts, reverse the decision of the trial court denying the forfeiture specification, vacate Recinos' sentence and remand this case for further proceedings. The state's second and fourth assignments of error are premature.

By Gwin, P.J.,

Farmer, J., and

Baldwin, J., concur